FORM 12. Informal Opening Brief (District Court, Court of International Trade, and Court of Federal Claims)

Form 12 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### INFORMAL BRIEF OF APPELLANT

RECEIVED

NOV 29 2022

United States Court of Appeals
For The Federal Circuit

**Case Number:** 2023-1161

**Short Case Caption:** Golden v. Apple, Inc.

**Name of Appellant:** Larry Golden

---

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 30 pages.

Attach a copy of the trial court's opinion, order, and/or judgment. You may also attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

---

1. Have you ever had another case before this court?   ☑ Yes   ☐ No
   If yes, state the name and number of each case.

   > Golden v. US: Case No. 2022-1196
   > Golden v. Apple, Inc. et al: Case No. 2022-1229
   > Golden v. Google LLC: Case No. 2022-1267

2. Did the trial court incorrectly decide or fail to take into account any facts?
   ☑ Yes   ☐ No
   If yes, what facts?

   > The United States Court of Appeals for the Federal Circuit in LARRY GOLDEN, Plaintiff-Appellant v. APPLE INC., Defendant-Appellee; Case: 20-1508; Document: 16; Filed: 09/03/2020, has already decided the cause of actions between § 1498(a) and § 271(a) are not duplicative. Therefore, this case cannot be lawfully dismissed because of "issue preclusions".

3.  Did the trial court apply the wrong law? ☑ Yes    ☐ No
   If yes, what law should be applied?

> The trial court relied on, and applied Defendant's interpretation of issue preclusion: "[w]ith respect to issue precIThe trial court relied on, and applied Defendant's interpretation of issue preclusion: "[w]ith respect to issue preclusion, all of the elements are present: '(1) [a] final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit."With respect to at (1) final adjudication is based on Golden v. Apple case no. 2022-1229 (dismissed without prejudice), not Golden v. US case no. 2022-1196. at (2) cause of actions § 1498(a) [Government infringement], and § 271(a) [Infringement by Private Entity] do not have identical issues. at (3) induced, contributory, joint, and willful infringement are all issues that cannot be raised under § 1498(a) [Government infringement], but are alleged against Apple in this current case. at (4) under § 1498(a), the USCFC hears claims against the Government [not Apple] for money damages. uison. all of the elements are present: '(1) [a] final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit."With respect to at (1) final adjudication is based on Golden v. Apple case no. 2022-1229 (dismissed without prejudice), not Golden v. US case no. 2022-1196. at (2) cause of actions § 1498(a) [Government infringement], and § 271(a) [Infringement by Private Entity] do not have identical issues. at (3) induced, contributory, joint, and willful infringement are all issues that cannot be raised under § 1498(a) [Government infringement], but are alleged against Apple in this current case. at (4) under § 1498(a), the USCFC hears claims against the Government [not Apple] for money damages.

4.  Did the trial court fail to consider important grounds for relief?
   ☑ Yes    ☐ No
   If yes, what grounds?

> The Federal Circuit, in the Google case 2022-1267; filed 09/08/2022: "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189. The key column describing the infringing nature of the accused products is not the same as the complaint held frivolous in the 2019 case. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart ... the complaint or claim chart [] is not facially frivolous." Apple's smartphones 11, 12, and 13 all have the same features and functions the same as the Google Pixel 5 Smartphone. Plaintiff demonstrated that claim to the trial court in charts using the same patents and patent claims used to decide the Google case. Summary judgement / injunctive relief was not considered

5.  Are there other reasons why the trial court's decision was wrong?
   ☑ Yes    ☐ No
   If yes, what reasons?

> For a pleadings to be "frivolous" it is either "to fantastical", "to unbelievable", or, it has no basis in law. The US District Court for the State of South Carolina has made it easy for the trial court to tag this case as "frivolous", without actually saying what exactly makes it "frivolous". Is it the evidence presented that Apple developed the smartphone under a Gov't contract; is it Plaintiff's patents issued with the presumption of validity; is it the certified mailing receipt introduced into evidence of a cease and desist request and proposal for entering into a licensing agreement dating back to year 2010; or, is it the evidence presented on a "clear and convincing" that someone other than Jobs/Apple actually invented the smartphone. The presiding judge in this case is known throughout the industry as the "Apple Judge" (Google search). Plaintiff believes the presiding judge lacks the ability to be unbiased.

**FORM 12. Informal Opening Brief (District Court, Court of International Trade, and Court of Federal Claims)**

Form 12 (p. 3)
July 2020

6. What action do you want this court to take in this case?

> Plaintiff is asking this Court to vacate and remand this case back to the District Court; with instructions to the Court that the Plaintiff is entitled to a "jury trial".
>
> Included with this Informal Opening Brief (Form 12), is a copy of Order and Plaintiff's Memorandum in Support of Plaintiff's Informal Opening Brief (combined total not to exceed 30 pages).

Date: 11/27/2022

Signature: *Larry Golden*

Name: Larry Golden

## PLAINTIFF-APPELLANT'S MEMORANDUM IN SUPPORT OF
## PALINTIFF-APPELLANT'S INFORMAL BRIEF

**The Trial Court Clear Error of Judgement: "Golden's patent infringement claims against Apple are barred by issue preclusion because they have been fully litigated and decided.** *See Golden v. United States*, **156 Fed. Cl. 623 (Fed. Cl. 2021), aff'd,** *Golden v. United States*, **No. 13-cv-00307, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022)".**

The United States Court of Appeals for the Federal Circuit in LARRY

GOLDEN, *Plaintiff-Appellant* v. APPLE INC., *Defendant-Appellee*; Case: 20-

1508; Document: 16; Filed: 09/03/2020, has already decided the cause of actions

that are § 1498(a) [Government infringement], and § 271(a) [Infringement by

Private Entity], are not duplicative. The Federal Circuit writes:

> "[A]fter Golden amended his complaint, the Magistrate Judge recommended dismissal without prejudice and without service of process because the case was duplicative of parallel proceedings Golden brought against the government in the Court of Federal Claims ... Golden objected to the Magistrate Judge's Report and Recommendation, arguing that the present action was not duplicative but was instead a separate action against nongovernmental entities for patent infringement ...we affirm the district court's *dismissal without prejudice and without service of process, not on the basis of duplicity...*"

Therefore, this case cannot lawfully be barred by "issue preclusion",

because, according to the Federal Circuit in *Golden v. Apple* Case: 20-1508

Document: 16; Filed: 09/03/2020, the cases are not duplicative cases.

The trial court relied on, and applied Defendant's interpretation of issue

preclusion: Defendant stated, "[w]ith respect to issue preclusion, all of the

elements are present: '(1) [a] final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit.'"

Plaintiff-Appellant objects to Defendant's argument that this case have been fully litigated and decided. With respect to element (1): final adjudication is based on *Golden v. Apple* case no. 2022-1229 (dismissed without prejudice), ***not*** *Golden v. US* case no. 2022-1196. With respect to element (2): cause of actions § 1498(a) [Government infringement], and § 271(a) [Infringement by Private Entity] do not have identical issues.[1] With respect to element (3): induced, contributory, joint, and willful infringement are all issues that cannot be raised under § 1498(a) [Government infringement], but are alleged against Apple in this current case. With respect to element (4): under § 1498(a), the USCFC hears claims against the Government [not Apple] for money damages.

The US Court of Federal Claims (USCFC) is unique in the federal trial court system in that it has nationwide jurisdiction, and hears a variety of claims against the US government for money damages, including patent [] infringement … The

---

[1] This current case *Golden v. Apple* case no. 3:22-cv-04152-VC and the two previous cases named in the opinion *Golden v. United States*, 156 Fed. Cl. 623 (Fed. Cl. 2021), aff'd, *Golden v. United States*, No. 13-cv-00307: are two different cases with two different causes of action. Therefore, it is improper, and a clear error of judgement to dismiss this case under the statue of "issue preclusion". Apple, in *Golden v. United States* cannot be held liable for patent infringement.

government has expressly waived its sovereign immunity and consented to be sued for patent infringement under 28 U.S.C. § 1498(a) …

No such waiver exists, or is necessary under § 271(a) [Infringement by the Private Entity—Apple], because § 271(a) is not a cause of action brought against the Government for money damages.

Section 1498(a) took its present form in 1949, and retains the bedrock principles established in 1910 and 1918 of (1) defining the government's unlawful use or manufacture of patented articles as a Fifth Amendment taking of a license to use a patented invention, (2) providing government contractor immunity from patent infringement litigation, and (3) limiting available remedies to monetary damages. Act of May 24, 1949, Pub. L. No. 81-72, § 87, 63 Stat. 89, 102 Section 1498(a) provides in pertinent part:

> "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture … For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States." 28 U.S.C. § 1498(a).

In *Decca Ltd. v. United States* 640 F.2d at 1167, the Court of Claims interpreted § 1498 to mean that the government consented to be sued for damages

stemming from direct infringement by consenting to suits for its "taking of a patent license," because § 1498(a) does not give rise to government liability for activities "which fall short of direct infringement," including induced and contributory infringement, which contain intent requirements. § 1498(a) only references patented inventions "used or manufactured by or for the United States" as potentially infringing acts.

Plaintiff has alleged induced, contributory, joint, and willful infringement that carries with it an element of enhanced damage award in the current complaint. The Trial Court's clear error of judgement occurred when the Court dismissed Plaintiff's case because all issues "have been fully litigated and decided under 28 U.S.C. § 1498(a).

The Patent Act defines patent infringement as a statutory tort in 35 U.S.C. § 271. Section 271(a) of the Patent Act provides:

> "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

In the 2012 en banc decision *Zoltek V*, the Federal Circuit abrogated *Zoltek III*, holding that establishing conduct falling within the definition of direct infringement codified in 35 U.S.C. § 271(a) is not a predicate to finding infringement under § 1498(a). Instead, the court concluded that the scope of §

1498(a) is "linked to the scope of the patent holder's rights as granted by the patent

grant in title 35 U.S.C. section 154(a)(1)." *Zoltek V*, 672 F.3d at 1323. In contrast

to the statutory definitions of infringement in § 271, § 154(a)(1) defines the patent

grant issued by the USPTO as:

> "[T]he right to exclude others from making, using, offering for sale, or
> selling the invention throughout the United States or importing the invention
> into the United States, and, if the invention is a process, . . . the right to
> exclude others from using, offering for sale or selling throughout the United
> States, products made by that process, referring to the specification for the
> particulars thereof." 35 U.S.C. § 154(a)(1).

In *Zoltek V*, the appellate court emphasized that § 1498(a) is "its own

independent cause of action" with three elements to trigger government liability:

(1) the invention must be claimed in a patent; (2) it must be "used or manufactured

by or for the United States," ...; and (3) the "use or manufacture" of the patented

invention must be done without license or lawful right ...

If these two elements—acting "for the government" with its "authorization

or consent"—are met, then a contractor who infringes a patent in the course of its

performance of work for the government, under any definition of infringement in §

271 of the Patent Act, is shielded from liability.

> "More fundamentally, however, they illustrate the painfully obvious
> problem with plaintiff's case: he has not, and at this point in the litigation we
> must presume cannot, credibly allege what component of the accused Apple,
> or Samsung for that matter, devices infringe literally, or is even equivalent
> to, hazard detectors or sensors claimed in his patents ... This is clarified
> further in plaintiff's reply brief where he explains that he has tried to

demonstrate to defendant that "when the sensing and detection means is placed in, on, upon, or adjacent the cell phone, the integration forms a 'sensor'." Pl.'s Reply at 5. He goes on to include pictures of examples, which show the additional sensors added or affixed to the phones. They are not native to the devices as manufactured by Apple or Samsung. Unable to find a sensing component in the accused devices, Mr. Golden did as he has done for many years now, simply brought in another party and device. Unexplained is how they relate either to the products ostensibly accused by the complaint or the overarching mystery present in all of plaintiff's pleadings—how the government is on the hook for the private parties' products. *Golden v. US* "OPINION" Case 1:13-cv-00307-EGB Document 249 Filed 11/10/21 Page 8-9 of 13

The Defendant (the "Government"), and the Federal Claims Court denied and rejected Plaintiff's claim that Apple was acting "for the benefit of the Government"; and, that Apple had the "authorization or consent" to infringe Plaintiff's patent(s) in the course of its performance of work for the Government.

Apple is not shielded from any liability that may arise in the U.S. District Court for the Northern District of California under infringement in § 271, because the lower court described the Apple products Plaintiff alleged was developed "for the government" with its "authorization or consent" as the products of the "private parties'".

Therefore, Plaintiff is not barred by issue preclusion because the Claims Court never litigated Plaintiff's claims of "Government Infringement" under Section 1498(a); and, the Claims Court was outside its jurisdictional authority to adjudicate Plaintiff's infringement claims under 35 U.S.C. § 271(a).

**The Trial Court Clear Error of Judgement: "Occurred when the Court proclaimed Plaintiff's induced, contributory, joint, and willful infringement claims alleged in this Case against Apple "have been fully litigated and decided under 28 U.S.C. § 1498(a). *See Golden v. United States*, 156 Fed. Cl. 623 (Fed. Cl. 2021), aff'd, *Golden v. United States*, No. 13-cv-00307, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022)".**

Plaintiff-Appellant's *Golden v. Apple, Inc*. CAFC case no.2022-1229 that precedes this current case was dismissed ***without prejudice*** in the S.C. District Court and affirmed in the CAFC.

Without prejudice is when a court dismisses a claim but leaves the plaintiff free to bring a subsequent suit based on the same grounds as the dismissed claim. *In Semtek Intern. Inc. v. Lockheed Martin Corp*., the Supreme Court pointed out that one of the main features of dismissal without prejudice is that it does not prevent refiling of the claim... "a case that is dismissed "without prejudice" is only dismissed temporarily. This temporary dismissal means that the plaintiff is allowed to re-file charges, alter the claim, or bring the case to another court."

Plaintiff's *Golden v. Apple, Inc*. CAFC case no.2022-1229 was dismissed because Plaintiff "failed to include factual allegations beyond the identities of the Defendants ... the alleged infringing devices ... the alleged infringed upon patents.

Plaintiff's claims of induced and contributory infringement requires that the accused infringer Apple knew of both the patent in suit and its infringement of that patent. Plaintiff's complaint filed in the case on 07/15/2022 as DKT. 1 has attached "Exhibit C", which is a certified receipt of the notice Plaintiff sent Apple in 2010.

To merit an enhanced damage award, infringing conduct must rise to the

level of egregious misconduct—above the level of mere intentional or knowing

infringement.

However, at the pleading stage, an enhanced damages claim based on willful

infringement must only plausibly allege that the accused infringer (1) had

knowledge of, or was willfully blind to, the existence of the asserted patent and (2)

had knowledge of, or was willfully blind to the fact, that the accused infringer's

conduct constituted, induced or contributed to infringement of the asserted patent.

Although courts do not require "heightened fact pleading of specifics,"

*Twombly*, 550 U.S. at 570; Plaintiff must allege "'enough fact[s] to raise a

reasonable expectation that *discovery* will reveal' that the defendant is liable for

the misconduct alleged." *In re Bill of Lading Transmission & Processing Sys. Pat.

Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012)

Plaintiff's allegations of direct infringement are subject to the pleading

standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Attached to the complaint are detailed claim charts to support Plaintiff's

alleged direct infringement: Claim 1 of Patent 7,385,497 (the '497 Patent); claim

10 of Patent 8,106,752 (the '752 Patent); claims 1-9 of Patent 9,096,189 (the '189

Patent); claims 13-23 of Patent 9,589,439 (the '439 Patent); and claims 4-6 of

Patent 10,163,287 (the '287 Patent).

**The Trial Court Clear Error of Judgement: "Occurred when the Court dismissed Plaintiff's Case for "Frivolousness"**

The Trial Court's motive to dismiss Plaintiff's case as "frivolous", is not

because it is too 'fantastical" and/or to "unbelievable"; it is because Apple and the

Trial Court Judge assigned to Plaintiff's case, realizes Plaintiff has pled enough

factual allegations to support Plaintiff's claims of antitrust law violations; induced

infringement; contributory infringement; direct infringement; and, joint

infringement, that if taken as true, proves Apple is more likely than not, liable for

the preponderance of factual allegations presented in this case.

One witness for the Plaintiff, is Plaintiff's lead engineer who began work

back in 2007. The engineer help put together presentations and charts that

described Plaintiff's CMDC device (i.e., new and improved cell phone;

smartphone) in response to certain DHS solicitations that included the DHS S&T

*Cell-All* BAA07-10 Ubiquitous Biological & Chemical Sensing; published

10/30/2007. https://www.dhs.gov/science-and-technology/cell-all-super-

smartphones-sniff-out-suspicious-substances.

Upon making the award for the DHS S&T *Cell-All* BAA07-10 Ubiquitous

Biological & Chemical Sensing initiative, DHS had already agreed to award

Plaintiff for the following reasons: 1) Plaintiff presented the technical rational and specifications before the solicitation was released, and when the solicitation was released, Plaintiff responded to DHS "request for proposal" by submitting a proposal to the DHS for the Cell-All initiative; 2) Plaintiff holds the patents for the technical rational and specifications the DHS published for the *Cell-All* initiative; and, 3) DHS had acknowledged, a certain percentage of contracts are set aside for Black-owned companies. Because of 1) and 2) above, Plaintiff was supposed to be awarded and appointed Project Manager for the DHS *Cell-All* initiative.

Plaintiff's lead engineer and witness participated in an event organized by Plaintiff to show a prototype new and improved cell phone/smartphone at the Embassy Suites, Greenville, SC. The engineer also designed a *TV* presentation for Plaintiff to demonstrate the prototype for Channel 16 (Channel 16 is a Religious Broadcasting show located in Greenville, SC). Plaintiff has DVD copies of the show, ready to present. The Court of Federal Claims would not allow Plaintiff's witness, no cause given.

The Trial Court fabricate a lie of "frivolousness" to dismiss Plaintiff's case before the case could make it to a jury. Example: In this current case *Golden v. Apple*, NDC case no. 3:22-cv-04152-VC, the presiding Judge Vince Chhabria dismissed Plaintiff's case as soon as Plaintiff's re-stated in Plaintiff's Case Management Statement (Dkt. 28) a request for a jury trial and informed the Court

13

of additional evidence: "Plaintiff and Defendant disagree that this Case is ready to be tried by jury. Plaintiff's evidence to be presented to the jury includes: 1) One hour video of Plaintiff's conception, which includes a 2004 disclosure document filed with the USPTO, of Plaintiff's CMDC device; 2) One hour video of the DHS conception of a new and improved cell phone (In 2007-08 DHS contracted Apple for the assembly of Plaintiff's new and improved cell phone / smartphone; and, 3) Video of Government, Nancy Pelosi, proclaiming Steve Jobs/Apple did not inventor of the smartphone".

Three days after Plaintiff filed his Case Management Statement (Dkt. 28; filed 10/17/2022 in case no. 3:22-cv-04152-VC) Judge Vince Chhabria stated in his ORDER GRANTING MOTION TO DISMISS (Dkt. 29; filed 10/20/2022): "[T]he motion to dismiss is granted. The claims asserted in the complaint are frivolous ... [T]he complaint is dismissed without leave to amend. Golden has been pressing these frivolous claims (or some variation thereof) for nearly 10 years in multiple jurisdictions."

Another example is Judge Vince Chhabria's blatant and deliberate disrespect for the decisions made by the Three-Judge panel of the United States Appeals Court for the Federal Circuit in *Golden v. Google LLC.* (Case No. 22-1267) that includes the Federal Circuit's decision to vacate and remand the Google case for the following reasons:

"In the Google case, the district court again concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189." ... "We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. On remand, the district court should allow the complaint to be filed and request service of process ... no opinion as to the adequacy of the complaint or claim chart except that it is ***not facially frivolous***."

Also, in Plaintiff's Case Management Statement Dkt. 28; filed 10/17/2022 in case no. 3:22-cv-04152-VC; at #s 5 & 6, Plaintiff responded he intends to amend the complaint with the chart presented below, and to add the alleged factual allegations of "joint infringement" between Apple and Google *See Golden v. Google LLC*. CAFC Case No. 22-1267.

The Trial Court was quick to dismiss before allowing Plaintiff an opportunity to include relevant material from the *Golden v. Google LLC* CAFC Case No. 22-1267; concerning Apple. The Trial Court's error is judgement occurred when the Judge stated: "[T]his is the rare case where dismissal without leave to amend is appropriate at the outset."

The following claim chart is identical to the same chart submitted to the Federal Circuit in the Google case. The elements of the Apple iPhone 12 were added for comparison. The Pixel 5 and iPhone 12 mirrors each other. Therefore, the Apple case is not facially frivolous:

15

## Google Pixel 5 "mirrors" Apple's iPhone 12: "Literal Infringement"

| Google Pixel 5 Smartphone | Apple iPhone 12 Smartphone | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Independent Claim 23 | Patent #: 9,096,189; Independent Claim 1 |
|---|---|---|---|---|
|  |  | A monitoring device, comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
| CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) System-on-a-chip: Qualcomm Snapdragon 765G | CPU: Hexa-core (2x3.1 GHz Firestorm + 4x1.8 GHz Icestorm). System-on-a-chip: Apple A14 Bionic (5 nm). iOS 14.1, upgradable to iOS 16.1 | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |
| Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. | Temperature sensors located within; the sensors monitor the battery and processor's temperature. In extreme temperatures (hot or cold), these sensors shut down the device to prevent damage | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X | X |

| | | | | |
|---|---|---|---|---|
| Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | Accelerometer (gravity sensor) supported by the iOS platform. Accelerometer/Motion sensor: This sensor helps the screen automatically switch from landscape to portrait modes and back again based on whether you're holding the phone vertically or horizontally. | at least one motion sensor in communication with the at least one CPU; | X | X |
| Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6-inch flexible OLED display at 432 ppi | Adjusts the screen brightness for current light conditions using the built-in ambient light sensor. Screen: 6.1" Super Retina XDR (OLED). Lock the screen orientation so that it doesn't change when the iPhone is rotated. | at least one viewing screen for monitoring in communication with the at least one CPU; | X | X |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 5 802.11 a/b/g/n/ac/6, dual-band, Bluetooth 5.0. NFC, GPS, GLONASS, Galileo, QZSS Nano-SIM; eSIM or Dual SIM | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; |

| | | | | |
|---|---|---|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 5 802.11 a/b/g/n/ac/6, dual-band, hotspot. Bluetooth 5.0. NFC, GPS, GLONASS, Galileo, QZSS Nano-SIM; eSIM or Dual SIM | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of… WiFi connection, internet connection, radio frequency (RF) connection, cellular connection… capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group… of satellite, Bluetooth, WiFi… |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 5 802.11 a/b/g/n/ac/6, dual-band, hotspot. Bluetooth 5.0. NFC, GPS, GLONASS, Galileo, QZSS Nano-SIM; eSIM or Dual SIM | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | at least one of a… Bluetooth connection, WiFi connection, internet connection… cellular connection… short range radio frequency (RF) connection, or GPS connection; | X |
| Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | Apple's iOS operating system features a lock mechanism to secure your phone. After multiple failed attempts to unlock the phone, the phone locks and is disabled (made unavailable).<br><br>Apple Home Key digital security code is stored in Apple Wallet app. It is based on NFC technology. 2 modes of operation: Express Mode: Bring an iPhone or Apple Watch to the lock. Face ID or Passcode. Must use Face ID / Touch ID or enter a passcode. | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device; | X |

| | | | | |
|---|---|---|---|---|
| Pixel phones use USB-C with USB 2.0 power adapters and cables. To charge your phone with a USB-A power adapter, use a USB-C to USB-A cable. | USB-A to Lightning cable or the newer USB-C to Lightning cable with your iPhone. The MagSafe Battery Pack makes on-the-go, wireless charging easy and reliable—just attach it to your iPhone | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X | X |
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | Apple's iOS operating system allows for Face ID authentication with the iPhone 12. The phone also features a lock mechanism to secure your phone. After multiple failed attempts to unlock the phone, the phone locks and is disabled (made unavailable). Apple Home Key digital security code is stored in Apple Wallet app. It is based on NFC technology. 2 modes of operation: Express Mode: Bring an iPhone or Apple Watch to the lock. Face ID or Passcode. Must use Face ID, Touch ID, or enter a passcode. | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use |

| | | | | |
|---|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) provides an interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween… |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) is a digital application available to warfighters throughout the DHS / DoD. iTAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, iTAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |

| | | | | |
|---|---|---|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 5 802.11 a/b/g/n/ac/6, dual-band, hotspot. Bluetooth 5.0. NFC, GPS, GLONASS, Galileo, QZSS Nano-SIM; eSIM or Dual SIM | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU... | X | X |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Apple Home Key digital security code is stored in Apple Wallet app. It is based on NFC technology. 2 modes of operation: Express Mode: Bring an iPhone or Apple Watch to the lock. Face ID or Passcode. Must use Face ID / Touch ID, or enter a passcode.<br><br>*iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) provides an interface for viewing and controlling different CBRN-sensing technologies | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or... detect at least one of a chemical biological... agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; |

| | | | | |
|---|---|---|---|---|
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Apple Home Key digital security code is stored in Apple Wallet app. It is based on NFC technology. 2 modes of operation: Express Mode: Bring an iPhone or Apple Watch to the lock. Face ID or Passcode. Must use Face ID / Touch ID or enter a passcode.<br><br>*iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) provides an interface for viewing and controlling different CBRN-sensing technologies | X | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) is a digital application available to warfighters throughout the DHS / DoD. iTAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, iTAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; |

22

| | | | | |
|---|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) is a digital application available to warfighters throughout the DHS / DoD. iTAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, iTAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. | X |

The Apple iPhone 13 smartphone was just recently reviewed by a Three-Judge panel at the United States Court of Appeals for the Federal Circuit in *Golden v. Google, LLC* CAFC Case: 22-1267 (Dkt. 9) Filed: 03/03/2022. The Apple iPhone 13 smartphone was compared to Plaintiff's patented CMDC (i.e., smartphone); Google's Pixel 5 smartphone; and Samsung's Galaxy S20 smartphone.

The following chart represents a consolidated version of the charts Plaintiff presented *Golden v. Google, LLC* Case: 22-1267. The Federal Circuit States: … "the complaint or claim chart [] that it is ***not facially frivolous***."

| Plaintiff-Appellant's [Smartphone] | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
|  |  |  |  |
| Communication, Monitoring, Detecting, & Controlling (CMDC) Device | Electronic Device | Mobile Device | Consumer Device |
| Central Processing Unit (CPU) | CPU: Octa-core (1x2.4 GHz Kryo 475 Prime. Chipset: Qualcomm SM7250 Snapdragon 765G 5G. Google Android 11 OS | CPU: Hexa-core (2x3.22 GHz Avalanche + 4xX.X GHz Blizzard). Chipset: Apple A14 Bionic (5nm) iOS 14.1 Operating System (OS) | CPU: Octa-core (2x2.73 GHz Mongoose M5Chipset: Qualcomm SM8250 Snapdragon 865 5G. Google Android 10 OS |
| Internal Sensor for C/B/R detection | Dual cameras: 12.2 MP, f/1.7, 27mm (wide), 1/2.55", 1.4μm, dual pixel PDAF, OIS 16 MP, | Dual cameras: 12 MP, f/1.6, 26mm (wide), 1.7μm, dual pixel PDAF, sensor-shift OIS12 MP, | Triple cameras: 12 MP, f/1.8, 26mm (wide), 1/1.76", 1.8μm, Dual Pixel PDAF, OIS 64 MP, |
| Remote Detector for C/B/R/N detection | Best watches for Google Pixel 5: Samsung Galaxy Watch 3 and Fitbit Sense. | Apple Watch Series 7 | Samsung Galaxy Watch 4 |
| Radio-Frequency Near-Field Communications (NFC) | Near-Field Communications (NFC) | Near-Field Communications (NFC) | Near-Field Communications (NFC) |
| Biometrics & Lock Disabling Mechanism | Fingerprint ID (rear-mounted) & Lock Disables after multiple failed attempts to open | Face ID & Lock Disables after multiple failed attempts to open | Fingerprint (under display, ultrasonic) & Lock Disables after multiple failed attempts to open |
| Internet | Wi-Fi 802.11 a/b/g/n/ac, dual-band, Wi-Fi Direct, hotspot | Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, hotspot | Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct, hotspot |

The same, or relatively the same, patent claims of the same patents (i.e.,

claim 5 of the '287patent; claim 23 of the '439 patent; and, claim 1 of the '189

patent) reviewed by the Federal Circuit in *Golden v. Google, LLC* Case: 22-1267:

> "Mr. Golden's complaint includes a detailed claim chart mapping features of
> an accused product, the Google Pixel 5 Smartphone, to independent claims
> from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 ... It
> attempts—whether successfully or not—to map claim limitations to
> infringing product features, and it does so in a relatively straightforward
> manner ... Mr. Golden has made efforts to identify exactly how the accused
> products meet the limitations of his claims in this chart."

are asserted in the original complaint (Dkt. 1) of the current appealed case at ¶ ¶:

➢ 55. Apple and its co-conspirators Qualcomm, Samsung, & LG, made the
decisions not to appear. Exhibit B. By default, Apple is barred from entering
a defense in this Court for non-infringement or that any of the following
patent claims are invalided: Claim 1 of the '497 patent; claim 10 of the '752
patent; claims 1-9 of the '189 patent; claims 13-23 of the '439 patent; and,
claims 4-6 of the '287 patent.

➢ 69. Certain Apple Inc.'s smartphones, laptops, tablets, and smartwatches are
infringing at least one patent claim of PO's following patents: [7,385,497];
[7,636,033]; [8,106,752]; [8,334,761]; [8,531,280]; [RE43,891];
[RE43,990]; [9,096,189]; [9,589,439]; and, [10,163,287].

➢ 75. Plaintiff, in the related case, COFC 13-307C, *Golden v. US*, identified
ten alleged infringing products that Plaintiff believes infringes at least 25
independent claims of Plaintiff's patents asserted in the case [claim 1 of the
'497 patent; claim 10 of the '752 patent; claims 1-9 of the '189 patent;
claims 13-23 of the '439 patent; and, claims 4-6 of the '287 patent]. An
example of Apple's alleged infringement of at least 25 independent claims
of Plaintiff's patents are attached. Exhibits F

➢ 85. Apple, Samsung, LG, and Qualcomm assembled the CMDC device
while under Government contract. Plaintiff believes Apple, Samsung, LG,
and Qualcomm was guided by Plaintiff's "product grouping" strategies.
Plaintiff's CMDC [smartphone] device is Plaintiff's invention, of inventions.
See below: Exhibits G-M; '497, '752, '189, '439, '287, '619, '891 patents

The Trial Court's Opinion & Judgement in this case is barred by *stare decisis*. With respect to vertical *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. (*Auto Equity*, supra, 57 Cal.2d at p. 455.)

The Court of Appeals for the Federal Circuit (the Federal Circuit) is unique among the circuit courts of appeals because it has nationwide jurisdiction over certain subject matter, including patents. 28 U.S.C. § 1295(a)(1) (2006). See *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826 (2002); http://www.cafc.uscourts.gov/about.html. The Federal Circuit Court of Appeals hears appeals from patent cases... does not oversee its own district courts.

Regardless of the district court in which the Plaintiff in a patent case files suit, under federal law, the Federal Circuit Court of Appeals, in Washington, D.C., has exclusive jurisdiction over appeals if the case "arises under" any federal law related to patents [28 U.S.C. §1295(a)(1)].

The Federal Circuit is different from the other US federal appeals courts in that it hears cases based upon subject matter versus those matters brought in a specific geographic location. The decisions of the court, in particular in regard to cases involving patents are unique in that they are binding precedent. Decisions of this circuit are only superseded by changes in specific law, or from decisions

rendered by the US Supreme Court. https://law.justia.com/cases/federal/appellate-courts/cafc/

The litigation and resolution of Plaintiff's infringement allegations against Google products in the United States Court of Appeals for the Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267 included allegations of Apple's alleged joint infringement with Google, and comparison claim charts between the Apple iPhone 13 smartphone; Plaintiff's patented CMDC (i.e., smartphone); Google's Pixel 5 smartphone; and Samsung's Galaxy S20 smartphone.

Although Apple was not named as a Defendant in the Google case, the Federal Circuit's decision in the Google case precludes re-evaluating the sufficiency [frivolous v. nonfrivolous] of Plaintiff's claims against Apple under the doctrine of "Vertical *Stare Decisis*". If the Federal Circuit follows the doctrine of Horizontal *Stare Decisis*, the Circuit has already decided the allegations of "joint infringement against Apple in Google complaint as "not facially frivolous".

**The Trial Court Clear Error of Judgement: "Occurred when the Court failed to consider Apple's Knowledge of Plaintiff's Intellectual Property Subject Matter and Apple's Motives to Unjustly Enrich Itself by Violating Certain Antitrust Laws**

Plaintiff believes Apple has unjustly enriched itself [*the doctrine of unjust enrichment allows a plaintiff to recover from a defendant, without the benefit of an enforceable contractual obligation, where the defendant has unfairly benefited*

*from the plaintiff's efforts without compensation*] by using Plaintiff's patented communication, monitoring, detecting, and controlling (CMDC) devices (i.e., a smartphone, a laptop, or a tablet), and Plaintiff's central processing units (CPUs), i.e., the "brains" of the CMDC devices; which no device can function without at least one central processing unit (CPU).

Plaintiff's claim for unjust enrichment required the Plaintiff to show that: (1) Plaintiff conferred a benefit onto Apple; (2) Apple had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for Apple to retain the benefit without payment of its value.", *Platz Associates v. Finley*, 973 A.2d 743, 750 (2009).

On 11/19/2010: Plaintiff's notice letters and licensing offer was mailed U.S. Postal Service, Certified Mail to Mr. Tim Cook, Chief Operating Officer (COO) of Apple, and Mr. Bruce Sewell, SVP & General Counsel; to 1 Infinite Loop, Cupertino, CA 95014. Apple received and signed for the letters 11/16/2010. Tracking Nos: 7009 2250 0001 0170 9861 and 7009 2250 0001 0170 9854. (Exhibit C of the Original Complaint). Plaintiff is quoted as saying:

> "[m]y technology covers electronic devices, mobile devices, authentication (biometrics) technology; mobile devices lock and unlock features, RFID reader technology for mobile devices, embedded sensors in electronic devices, embedded sensors in mobile and portable devices, mobile phones as readers, embedded sensors in cell phone cases; mobile, electronic and portable devices used as monitoring equipment for locating, tracking, navigating and status of sensors."

On 07/01/2019, Plaintiff responded back to Apple's Krista Grewal, Counsel

IP Transactions, on Plaintiff's "Cease and Desist" request. (Exhibit D of the

Original Complaint). Plaintiff is quoted as saying:

- Certain Apple Inc.'s smartphones, laptops, tablets, [] are infringing at least one patent claim of PO's following patents: [7,385,497]; [7,636,033]; [8,106,752]; [8,334,761]; [8,531,280]; [RE43,891]; [RE43,990]; [9,096,189]; [9,589,439]; and, [10,163,287].
- Apple has applied for patents for its smartphones and smartwatches that covers chemical and biological detection; biometric fingerprint and signature; motion sensors; and, the detection of humans. I expect Apple to submit to the USPTO an IDS to disclose my patents as prior art references...
- Because Apple's smartphones; [] I am demanding Apple "cease and desist" the manufacture, offer for sell, the sell, and the inducement of others to infringe my patented invention(s)

The US District for the Eastern Court of Texas in *Motiva Patents, LLC v.*

*HTC Corporation,* E.D. Texas, 9:18-cv-00179 (Oct. 2019), ruled that having a

policy of ignoring others' patents is sufficient grounds to support claims of willful

patent infringement.

Plaintiff has established legal standing for violations of antitrust laws in this

case under the following statutes: See the Original Complaint for more details.

- Sherman Act 15 U.S. Code § 1: Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.
- Sherman Act 15 U.S. Code § 2: Makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations ..."

- Section 4 of the Clayton Act 1914 allows the recovery of damages by "any person injured in his business or property by reason of anything forbidden in the antitrust laws"
- Antitrust Injury: A Two-Prong Test: Plaintiff has established 1) The injury to Plaintiff is of a type that the antitrust laws were intended to prevent; and, 2) Plaintiff's injury flow from that which makes the defendant's acts unlawful

Antitrust injury is a limiting doctrine that obliges a private plaintiff in an antitrust case to show that its claimed losses have been caused by a "competition-reducing" aspect of the challenged antitrust violation.

## **CONCLUSION**

Plaintiff is asking the Court to vacate and remand this case back to the District Court.

Sincerely,

Date: *November 27, 2022*

*Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 27nd day of November, 2022, a true and correct copy of the foregoing "Informal Brief of Appellant", was served upon the following Defendant by priority "express" mail:

Jack P. DiCanio

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 University Avenue, Suite 1400

Palo Alto, California 94301

Phone: (650) 470-4500

Fax: (650) 470-4570

Email: jack.dicanio@skadden.com

*Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN,<br><br>       Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br><br>       Defendant. | Case No. 22-cv-04152-VC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

      The motion to dismiss is granted. The claims asserted in the complaint are frivolous. Even if they were not frivolous, Golden's patent infringement claims against Apple are barred by issue preclusion because they have been fully litigated and decided. *See Golden v. United States*, 156 Fed. Cl. 623 (Fed. Cl. 2021), *aff'd, Golden v. United States*, No. 13-cv-00307, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022). And Golden's antitrust allegations fail to state an even remotely plausible claim. Golden does not (and cannot) plausibly allege a conspiracy or an injury "of the type the antitrust laws were intended to prevent." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021).

      The complaint is dismissed without leave to amend. Golden has been pressing these frivolous claims (or some variation thereof) for nearly 10 years in multiple jurisdictions. This is the rare case where dismissal without leave to amend is appropriate at the outset.

      **IT IS SO ORDERED.**

Dated: October 20, 2022

_____
VINCE CHHABRIA
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN,<br><br>      Plaintiff,<br><br>   v.<br><br>APPLE, INC.,<br><br>      Defendant. | 22-cv-04152-VC<br><br>**JUDGMENT** |

The Court, having dismissed this case without leave to amend, now enters judgment in favor of the defendant and against the plaintiff. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

Dated:  October 20, 2022

_____

VINCE CHHABRIA
United States District Judge