FORM 17.  Informal Reply Brief

Form 17 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### INFORMAL REPLY BRIEF OF PETITIONER/APPELLANT

**Case Number:** 23-1161

**Short Case Caption:** Golden v. Apple Inc.

**Petitioner/Appellant:** Larry Golden

---

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 15 pages.

You may attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Do not attach material already attached to your informal opening brief. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

---

1. Have you received a copy of the respondent/appellee's response brief?

   ☑ Yes     ☐ No

   **STOP:** You may use this form to respond to arguments raised in the brief of respondent/appellee. If you have not received that brief, you may not file this form. **Do not proceed or file this form if you answered "No."**

2. What are your arguments in response to the respondent/appellee?

   Patent Infringement and Patent Validity, was never decided in the Court of Federal Claims and the Court of Appeals for the Federal Circuit in Golden v. the United States. If the Claims Court and/or the Federal Circuit had decided on Patent Infringement and Patent Validity; the decision would have been made under the provisions of 28 U.S.C Section 1498; against or in favor of the Government [United States], NOT Apple. The Claims Court is outside its jurisdiction to adjudicate disputes against private parties e.g., a case between Golden and Apple. Forcing Plaintiff to prove direct infringement under 35 U.S.C. Section 271 as a necessary predicate to proving direct under 28 U.S.C. Section 1498 was overturned in Zoltek. Golden v. USA was dismissed under Rule 41(b) failure to comply with a court order, NOT for non-infringement; but because Plaintiff would not comply with order to only show infringing devices native to phone.

2023 JAN 17 A 4:14

RECEIVED

FORM 17. Informal Reply Brief

3. Are there other arguments you wish to make?     ☑ Yes     ☐ No

   If yes, please state them.

Normally, in a lawsuit between private parties, § 1498(a) operates as an affirmative defense, and where a private party's use of a patented invention is "for the Government" and with the "authorization and consent of the Government," that private party cannot be held liable for patent infringement. See Madey, 307 F.3d at 1359. But the Claims Court and the Government never recognized Apple as having infringed Plaintiff's patents "for the Government". The Claims Court dismissed 61 of 72 infringement allegations made by the Plaintiff in Golden v. USA for lack of subject matter jurisdiction because the Court determined Apple's consumer devices is the private property of Apple. The dismissal for lack of subject matter jurisdiction is based on the fact that the Claims Court does not have jurisdiction to adjudicate disputes between private parties. Under RCFC 14(b) Apple fail to appear to protect its interest. Apple's interest was to inform the Claims Court that Apple allegedly infringed Plaintiff's patents while performing work for the Government; and under RCFC 24 which allows apple to voluntarily intervene to informed the Claims Court that Apple's consumer devices was developed for the benefit of the Government, and are not the private property of Apple. Plaintiff's case Golden v. USA was dismissed under Rule 41(b) failure to comply with a court order.

Date: 01/12/2023

Signature: _Larry Golden_ (signature)

Name: Larry Golden

## MEMORANDUM REPLY IN SUPPORT OF
## PLAINTIFF-APPEALLANT'S PETITION

**The Federal Circuit in _Larry Golden v. Apple Inc._, Case: 20-1508 Dkt: 16 Filed: 09/03/2020 has already decided Plaintiff-Appellant's Case is not Duplicative**

"After Golden amended his complaint, the Magistrate Judge recommended dismissal without prejudice and without service of process because the case was duplicative of parallel proceedings Golden brought against the government in the Court of Federal Claims. Golden objected to the Magistrate Judge's Report and Recommendation, arguing that the present action was not duplicative but was instead a separate action against nongovernmental entities for patent infringement ... Golden argues on appeal that what the district court failed to appreciate is that while the earlier action asserted unfair acts by the government, the present action allegedly involves the infringing acts of third parties unrelated to any activities of the government ... For these reasons, we affirm the district court's dismissal without prejudice and without service of process, not on the basis of duplicity ..." United States Court of Appeals for the Federal Circuit; _Larry Golden v. Apple Inc._, Case: 20-1508 Dkt: 16 Filed: 09/03/2020

**The Court of Federal Claims; _Larry Golden v. The United States_ Case 1:13-cv-00307-EGB Dkt. 130 Filed 03/29/18 [Opinion and Order] stated: [Apple] "manufacture[d], develop[ed], and commercialize[d] their devices in their own economic self-interest." The Claims Court Dismissed 61 of 72 Alleged Infringement Claims that Included Consumer Devices**

"The Government also argues that the ... Complaint's "allegations relating generally to smartphones and other consumer devices should be dismissed" under RCFC 12(b)(1) and 12(b)(6), because they fail to allege "actual 'use' by the [G]overnment of the various combinations of consumer devices, nor would the [G]overnment's use be plausible." 10/20/17 Gov't Mot. at 16-17. In addition, the ... Complaint "fails to allege that any of these various consumer devices were made for the benefit of the [G]overnment." 10/20/17 Gov't Mot. at 17. The companies referenced in the ... Complaint "manufacture, develop, and commercialize their devices in their own economic self-interest." 10/20/17 Gov't Mot. at 17. Moreover, any benefit that the Government might receive does "_not constitute use or manufacture for the Government within the meaning of § 1498_."

10/20/17 Gov't Mot. at 17-18 (quoting *Sheridan*, 120 Fed. CL at 131 (determining that the alleged benefit to the Government of economic "stimulus, jobs, and revenue" was "merely an incidental effect of private conduct, [that does] not constitute 'use or manufacture for the Government' within the meaning of § 1498")). In sum, the ... Complaint contains no allegations that the Government actually used or authorized the use of any of the accused devices at issue. 10/20/17 Gov't Mot. at 20. Instead, the ... Complaint alleges only that the devices "can be used by the [Government]." 10/20/17 Gov't Mot. at 20 (underline in original)."

> "Cell-All aims "to equip your cell phone with a sensor capable of detecting deadly chemicals", says Stephen Dennis, Cell-All's program manager. [DHS-S&T] pursued cooperative agreements with four cell phone manufacturers: Qualcomm, LG, Apple, and Samsung ... The "devices" and "programs" identified include: ... Samsung Galaxy s6 ("BioPhone," "Biotouch System," "Nett Warrior"); Samsung SmartThings Hub; ... *The "private parties" identified include:* ... Apple Inc.; ... LG Electronics; ... Qualcomm Inc.; ... Samsung; ... Upon information and belief, the United States has infringed, and continues to infringe, at least claim 13 of the '439 Patent, and claims 18, 118, 12, 28, 25, 20, 32, and 30 of the '990 Patent as a current manufacturer, consumer, and/or user of the Samsung Galaxy s6 "BioPhone" ... As a result of contracts with the ... [NSF], Samsung Group, and the MIT Media Lab Consortium for the development and commercialization of the Samsung Galaxy s6 "BioPhone", and the "Samsung Electronic Communications Device", the United States has used, authorized the use, and manufactured, without license or legal right, Plaintiff's inventions described in and covered by the '439, and '990 Patents."

"Patent Infringement Allegations Concerning the Government's Alleged Use of "Smartphones and Other Consumer Devices" Must be Dismissed Under RCFC 12(b)(1) And 12(b)(6)."

**In the United States Court of Federal Claims; Defendant the United States' *Answer* to Plaintiff's [] Amended Complaint [DKT. 195] *Larry Golden v. The United States*; Case 1:13-cv-00307-EGB Dkt. 217 Filed 03/12/21**

- "[T]he Government admits that it is the named Defendant in this action. The Government further admits that the Department of Homeland Security (DHS), the Department of Homeland Security Science & Technology Directorate (DHS/S&T), the Homeland Security Advanced Research Project Agency (HSARPA), and the National Aeronautics and Space Administration (NASA) are agencies of the United States."

  *Question*: If the Government admits it is the named Defendant in this action, representing at least four Government agencies, how is it possible this case has already been decided in the Apple case when Apple is not listed as the Defendant, nor as a third-party in the case?

- "The Government admits that Synkera Technologies (which was acquired by Integrated Device Technologies, which in turn was acquired by Renesas Electronics Co. and now operates under the name Renesas America Inc., see Dkt. 198 at 2) participated in the CELL-ALL program."

  > "On appeal, Mr. Golden ... argues that the Claims Court overlooked other devices- "the sensors and detectors of the Cell-All third-party contractors (NASA, Qualcomm, Seacoast, Rhevision, and Synkera)"-and that the Claims Court erred in "[f}ail[ing] to consider sensors and detectors that are not 'native' to the manufacture of Apple and Samsung products." Appellant's Br. 2. Mr. Golden failed to even mention some of these other devices in his infringement contentions, and more importantly, he does not allege that these devices have actually been combined by the government (or contractors acting on its behalf) with the accused devices into a device or system that would infringe his asserted patent claims." Golden v. US CAFC Case No. 22-1196 Filed 09/08/2022

- "The Government further admits that the Department of Homeland Security's Science and Technology (S&T) Directorate sponsored a training exercise in Los Angeles on September 28, 2011, at which two different prototype devices developed in the CELL-ALL program were demonstrated..."

  *Question*: Plaintiff submitted a DVD of DHS's training exercise, why was it not included as proof, a "locking mechanism" was not a requirement for the development of the sensor phone?

- "[T]he Government admits that DHS entered into a contract (HSHQDC-09-C-00020) with Qualcomm to deliver a proof-of-concept sensor phone relating to the CELL-ALL Project. The Government further admits that DHS awarded the Qualcomm contract on January 9, 2009."

  *Question*: Plaintiff described Qualcomm's "Built-in Embedded" sensor, 324 times in the Apple, Samsung, and LG Preliminary Infringement Contentions Charts, why is it the Trial Court never recognized Qualcomm, or Qualcomm's "Built-in Embedded" sensor as the sensor located inside the device?

- "The Government admits that Dr. Jing Li is a physical scientist at NASA's Ames Research Center and participated in the CELL-ALL program."

  *Question*: The PTAB Judges in the *DHS v. Larry Golden* case, construed "embedded" to also mean "in", "on", or "upon". Plaintiff described NASA's "Nanosensor-Embedded Sleeve", 324 times in the Apple, Samsung, and LG Preliminary Infringement Contentions Charts, why is it the Trial Court never recognized NASA, or NASA's "Nanosensor-Embedded Sleeve" as the sensor located in [on or upon] the device?

- "The Government further admits that DHS S&T, regarding the CELL-ALL Project, pursued cooperative research and development agreements ("CRADAs") with Qualcomm, LG, Apple and Samsung."

  *Question*: If LG, Apple and Samsung phones are considered "native" to the development and assembly of the requested DHS sensor phone, why did the Trial Court separate the sensor providers from the phone providers?

- "The Government denies that DHS S&T executed any CRADAs with Qualcomm, LG, Apple or Samsung related to the CELL-ALL Project."

  *Question*: If the Government denies ever executing a contract or agreement with Apple, Samsung, and LG to perform work under the Cell-All program, why was Plaintiff ordered to submit preliminary infringement contentions charts on the "private entities" of Apple, Samsung, and LG?

**The Court of Federal Claims;** *Larry Golden v. The United States* **Case 1:13-cv-00307-EGB Dkt. 249 Filed 11/10/21 [OPINION] stated: "Unexplained is how they relate either to the products ostensibly accused by the complaint or the overarching mystery present in all of plaintiff's pleadings—how the government is on the hook for the private parties' products"**

"Plaintiff describes his invention as a Communication, Monitoring, Detecting, and Controlling Device, known as a "CMDC." ... This device is claimed by the five patents still at issue: the '497, '752, '189, '439 and '287 patents. [These refer to U.S. Patent Numbers 7,385,497; 8,106,752; 9,096,189; 9,589,439; and 10,163,287] ... Plaintiff's earlier, defective infringement contentions accused 28 specific devices, 10 manufactured by Apple, nine by Samsung, and nine by LG. The documents submitted by plaintiff on August 19, 2021, again identify 10 Apple products and nine from Samsung. Voluminous claim charts for these products are included. The document received on August 23, 2021, however, states that 30 devices from Apple, 27 from Samsung, and 27 from LG are at issue."

> "More fundamentally, however, they illustrate the painfully obvious problem with plaintiff's case: he has not, and at this point in the litigation we must presume cannot, credibly allege what component of the accused Apple, or Samsung for that matter, devices infringe literally, or is even equivalent to, hazard detectors or sensors claimed in his patents. [The same language is used in plaintiff's contentions regarding Samsung, and for that matter, LG. See, e.g., Samsung Claim Chart at 9, 16 et seq.] NODE+ and the additional sensor needed to make it work are not components of the phones and smart watches accused by plaintiff. This is clarified further in plaintiff's reply brief where he explains that he has tried to demonstrate to defendant that "when the sensing and detection means is placed in, on, upon, or adjacent the cell phone, the integration forms a 'sensor'." Pl.'s Reply at 5. He goes on to include pictures of examples, which show the additional sensors added or affixed to the phones. They are not native to the devices as manufactured by Apple or Samsung. Unable to find a sensing component in the accused devices, Mr. Golden did as he has done for many years now, simply brought in another party and device. Unexplained is how they relate either to the products ostensibly accused by the complaint or the overarching mystery present

7

in all of plaintiff's pleadings—how the government is on the hook for the private parties' products.

"Defendant's motion to strike and to dismiss (ECF No. 240) is granted pursuant to Rule 41(b)." [Not for non-infringement or that Plaintiff-Appellant's patents were found to be invalid].

**In the Court of Federal Claims; *Larry Golden v. The United States* Case 1:13-cv-00307-EGB; the Claims Court never recognized Apple as a Third-Party Contractor; or as a Third-Party Contractor who has "Authorization and Consent" from the Government to Make or Use Plaintiff-Appellant's Patented Inventions**

Subject matter jurisdiction is the power of a court to adjudicate a particular type of matter and provide the remedy demanded. A court must have jurisdiction to enter a valid, enforceable judgment on a claim. Where jurisdiction is lacking, litigants, through various procedural mechanisms, may retroactively challenge the validity of a judgment. The Claims Court must have jurisdiction to enter a valid, enforceable judgment on a claim. Where jurisdiction is lacking, Plaintiff-Appellant, through various procedural mechanisms, may retroactively challenge the validity of a judgment. Subject-matter jurisdiction is the requirement that the Claims Court have power to hear the Plaintiff's claim of patent infringement under Section 1498 that is brought to that court. While Plaintiff-Appellant may waive personal jurisdiction, Plaintiff-Appellant cannot waive subject-matter jurisdiction.

In *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1316 (Fed. Cir. 2005), the Federal Circuit held that "direct infringement under section 271(a) is a necessary predicate for government liability under section 1498". Revisiting the issue en banc, in *Zoltek V*, the court concluded that the correct interpretation of 1498(a) is that it creates a cause of action for direct infringement that is separate and different from 271(a) ... "[I]nfringement under 271(a) is thus not a necessary predicate for liablity under § 1498(a) as the earlier panel had held."

8

Therefore, the Claims Court was outside its jurisdiction when the Court ordered Plaintiff to prove direct infringement by at least: 1) omitting the parties contracted to provide the CBRNE sensors; and/or, 2) prove direct infringement with the use of sensors that are only "native" to the manufacture of the Apple smartphone.

Normally, in a lawsuit between private parties, § 1498(a) operates as an affirmative defense; and, where a private party's use of a patented invention is "for the Government" and with the "authorization and consent" of the Government," that private party cannot be held liable for patent infringement. See *Madey*, 307 F.3d at 1359. But the Claims Court and the Government never recognized Apple as having infringed Plaintiff's patents "for the Government" or with the "authorization and consent" of the Government.

The Claims Court dismissed 61 of 72 infringement allegations claims made by the Plaintiff in *Golden v. USA* for lack of subject matter jurisdiction because the Court determined Apple's consumer devices are the private property of Apple. The dismissal for lack of subject matter jurisdiction is based on the fact that the Claims Court does not have jurisdiction to adjudicate disputes between private parties.

**In The District Court of The United States for the District of South Carolina-Greenville Division; Case No. 6:19-cv-02557-DCC Dkt. 27 Filed 01/09/20. The Magistrate Judge Duplicated a Warning Plaintiff made of an Eventual Dispute that Would Inevitably Happen Between Apple and the Government (Defendant) in the Case of *Larry Golden v. The United States* Case No. 1:13-cv-00307-EGB)**

"force Apple, Samsung, and LG to decide between one or two choices: (1) In an effort to avoid any responsibility for infringement or liability of paying hundreds of billions of dollars in damages, the companies cho[o]se to throw the Government under the bus by presenting evidence that they were under contract to develop and manufacture devices that infringes my communication/monitoring device. If they cho[o]se this option it makes them a witness for me in my current case (*Larry Golden v. The United States*; Case # 13–

9

307C). (2) Deny the allegations of infringement. In this case I will present evidence to support the fact that the companies were under contract with the Government to develop and manufacture devices that infringe[ ] my communication / monitoring device, but that the companies decided to continue to develop and manufacture my communication / monitoring device beyond the specifications agreed upon with the Government, even after I notified the companies in 2010 to stop their manufacturing. If they cho[o]se this option it opens the companies up to willful infringement and the possibility of a temporary injunction to stop the manufacturing and development of my communication / monitoring device. If you were Apple, Samsung, and LG which option would you cho[o]se?"

In this current CAFC Appeal; Case No. 23-1161 (*Larry Golden v. Apple, Inc.*) Defendant Apple's Response Brief (Dkt. 7 Filed 01/09/2023); Request for Judicial Notice (Dkt. 8 Filed 01/09/2023); and Appendix (Dkt. 9 Filed 01/09/2023), were all filed in retaliation to the Claims Court and Government actions in the Case of *Golden v. The United States*; Case # 13–307C.

The Claims Court and Government actions in the Case of *Golden v. The United States*; Case # 13–307C rejected all theories of Apple being a governmental third-party contractor for the *Cell-All* project. While the government's liability for infringement under § 1498 is often analogous to the liability imposed on private parties by 35 U.S.C. § 271, the frameworks are different, and the government's liability ultimately depends on the express waiver of immunity provided in § 1498. See e.g., *FastShip LLC v. United States*, 122 Fed. Cl. 71, 78 (2015).

Under normal conditions, Section 1498 of Title 28 of the U.S. Code establishes an exclusive remedy for patent owners to obtain just compensation when the United States or its contractors infringe their patents, while also shielding contractors [Apple] from infringement liability and ensuring private patent rights do not obstruct government operations. Under that statutory framework, when a contractor [Apple] is performing work "for the Government and

with authorization or consent of the Government" is accused of patent infringement, § 1498

generally shields the contractor [Apple] from liability and provides that any infringement action

must be brought as a claim for money damages against the United States in the Claims Court.

In other words, § 1498 "waives the Government's sovereign immunity and provides a

remedy '[w]henever an invention described in and covered by a patent of the United States is

used or manufactured by or for the United States without license of the owner thereof or lawful

right to use or manufacture the same.'" *Liberty Ammunition, Inc. v. United States*, 835 F.3d

1388, 1394 n.3 (Fed. Cir. 2016) (citation omitted) (quoting 28 U.S.C. § 1498(a) (emphasis

added)) "By waiving the Government's sovereign immunity, § 1498 'provides a cause of action

against the United States' and [a]t the same time, ... protects government contractors [Apple]

against infringement liability and remedies where it applies.'" *Fastship, LLC v. United States*,

Nos. 2017-2248, 2017-2249 at *2 (June 5, 2018) (quoting *Astornet Techs. Inc. v. BAE Sys., Inc.*,

802 F.3d 1271, 1277 (Fed. Cir. 2015)). Over a century old, § 1498 implements important, long-

standing policies that (1) contractors [Apple] should not bear the risk associated with performing

work for the government that may be infringing, and (2) the government may be liable for

money damages (i.e., just compensation) for its infringing activities.

While the government's liability for infringement under § 1498 is often analogous to the

liability imposed on private parties by 35 U.S.C. § 271, the frameworks are different, and the

government's liability ultimately depends on the express waiver of immunity provided in § 1498.

See e.g., *FastShip LLC v. United States*, 122 Fed. Cl. 71, 78 (2015) (Lettow, J.). Thus, the ability

to enforce patent rights involving infringement based on a government contractors performance

depends on judicial interpretation of the terms of § 1498, including "used or manufactured."

There's not very much Apple can do at this point to change the Claims Court's position and opinion, so Apple has decided to retaliate by exposing the lies, errors, and mistakes the Court of Federal Claims and the Government made in *Golden v. The United States*; Case # 13–307C. While reviewing Apple's Response Brief (Dkt. 7 Filed 01/09/2023); Request for Judicial Notice (Dkt. 8 Filed 01/09/2023); and Appendix (Dkt. 9 Filed 01/09/2023), look for the following:

- How the Claims Court narrowed Plaintiff's case to the non-third-party private entities of Apple, Samsung, and LG.

- How the Claims Court continuously ignored Rhevision's CBR Camera sensors; NASA's "embedded sleeve" sensors; and Qualcomm's built-in embedded sensors.

- How the Claims Court continuously misrepresented Plaintiff's CPU as a CBR sensor, and how the Claims Court falsely accused Plaintiff of enlarging the case with the CPU.

- How the Claims Court continuously accused Plaintiff of not complying with the requirements of Rule 4.

- How the Claims Court continuously accused Plaintiff of not identifying the lock mechanism limitation of the patent claims, and how the Claims Court dismissed all 25 patent claims for "not identifying the lock mechanism", when only 12 of the 25 patent claims carried a limitation for the locking mechanism.

- How the Claims Court neglected to consider Qualcomm. Qualcomm was the prime contractor to receive funding for the *Cell-All* project. Qualcomm was the only contractor tasked with providing four major components for the assembly of the sensor phone: 1) a host device i.e., phone / handheld; 2) the communication protocol i.e., wireless modem; 3) the CPU for carrying out functional and operational instructions; and, 4) CBR sensors.

**In the Court of Federal Claims;** *Larry Golden v. The United States* **Case 1:13-cv-00307-EGB; Under Rule 14(b) of the Rules of the United States Court of Federal Claims (RCFC), the Claims Court Served Apple with a Notice to Appear to Protect any Interest Apple may have in the Case. Apple Failed to Appear.**

The Rules of the COFC ("RCFC") provide contractors at least two avenues for being heard at court. First, RCFC 14(b) allows parties [the Government] to formally notify any interested third-party [Apple], of the § 1498(a) complaint. A noticed party [Apple] "may file an appropriate pleading setting forth Apple's interest in the subject matter of the litigation." RCFC 14(c)(1)(a). Second, RCFC 24 allows interested parties [Apple] to proactively intervene, permissively or by right.

Under Rule 14(b) of the Rules of the United States Court of Federal Claims (RCFC), the court "may notify any person with the legal capacity to sue or to be sued who is alleged to have an interest in the subject matter of the suit." In resolving a petition for mandamus, the Federal Circuit held in In re *UUSI, LLC*, that a third party's potential obligation to indemnify the government for any patent infringement liability provides "sufficient interest in litigation to offer evidence and advance legal arguments appropriate to protect its own interests. As the USCFC held in *Bowser, Inc. v. United States*:

> "We think there is implicit in the whole plan and purpose of Subsection 14(b) a congressional intent that the issues of fact and law decided in a suit against the United States in the Court of Claims may not be retried in another court at the insistence of a third party, who had a "possible" interest in the case in this court but who failed to appear and protect his interest after timely notice or summons had been served upon him." 420 F.2d 1057, 1060 (Ct. Cl. 1970).

Under RCFC 14(b) Apple fail to appear to protect its interest. Apple was obligated to appear. Apple's interest was to inform the Claims Court that Apple allegedly infringed Plaintiff's patents while performing work for the Government; or, that Apple was NOT performing work for the Government, and Apple did not have the Government's "authorization and consent" to infringe Plaintiff's inventions. Again, Apple fail to appear.

Under RCFC 24, which allows Apple to voluntarily intervene, Apple fail to intervene to

inform the Claims Court that Apple allegedly infringed Plaintiff's patents while performing work

for the Government; or, that Apple was NOT performing work for the Government, and Apple

did not have the Government's "authorization and consent".


**In the Court of Federal Claims;** *Larry Golden v. The United States* **Case 1:13-cv-00307-EGB; In Apple's Response It's Very Clear Apple is Trying to Seek Shelter Under the Protective Arms of the Government; While Bashing Them in the Process. The Government has Clearly Stated, It has Nothing to do with Defending Apple as a Third-Party.**

| Email Correspondence |
|---|
| From: "Johnson, Grant D. (CIV)"<br>To: "atpg-tech@charter.net"<br>Cc:<br>Sent: Monday May 3 2021 2:24:19PM<br>Subject: RE: RE: Larry Golden v. USA No. 13-307C<br><br>Mr. Golden,<br><br>Regarding your e-mail below, please note that I represent the United States government in this matter. I do not represent any third parties such as Apple, Samsung, or LG, and those third parties are not my clients.<br><br>Best,<br><br>**Grant D. Johnson, Trial Attorney**<br>Intellectual Property Section \| Commercial Litigation Branch<br>Civil Division \| U.S. Department of Justice<br>T: (202) 305-2513 \| F: (202) 307-0345 |
| **From:** atpg-tech@charter.net <atpg-tech@charter.net><br>**Sent:** Sunday, May 2, 2021 8:42 AM<br>**To:** Johnson, Grant D. (CIV) <Grant.D.Johnson@usdoj.gov><br>**Subject:** RE: RE: Larry Golden v. USA No. 13-307C<br><br>Mr. Johnson:<br><br>Before our telephone conversation on Thursday, April 29, 2021 at 11:00 am Eastern, I sent you, via email, a Read-Ahead document that covers the subject matter you requested for conversation: "discuss [Plaintiff's] infringement contentions for Apple, Samsung, and LG.<br><br>Included in the Read-Ahead document is Plaintiff's "proposed settlement" for Apple, Samsung, LG, and Qualcomm. Plaintiff included the "proposed settlement" for Apple, Samsung, LG, and Qualcomm because as you stated in your "THIRD MOTION FOR NOTICE"; Dkt. No. 216 Filed 03/12/21: *"any judgment against the government with respect to any government use of the accused commercially available consumer electronics devices may trigger indemnification obligations of these third parties."* |

**In the Federal Circuit's; _Larry Golden v. Google LLC;_ Case No. 22-1267; the Complaint and Claim Chart was Found to be NOT Facially Frivolous and the Case was Remanded Back to the District Court. Element by Element, the Apple's Smartphone Devices "Mirrors" the Google Smartphone Device Asserted in Case No. 22-1267**

"[I]n the Google case, the district court again concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189. The district court discounted this claim chart because it 'contains the exact same language as the claim charts previously rejected by the Federal Circuit [in the 2019 case], although Google Pixel 5 Smartphone appears in the far-left column instead of Apple.' But to the extent that the chart includes the 'exact same language' as previously rejected charts, it is simply the language of the independent claims being mapped to. The key column describing the infringing nature of the accused products is not the same as the complaint held frivolous in the 2019 case. It attempts—whether successfully or not—to map claim limitations to infringing product features, and it does so in a relatively straightforward manner … We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. On remand, the district court should allow the complaint to be filed and request service of process. Our decision does not preclude subsequent motions to dismiss by the defendant for failure to state a claim or for summary judgment. We express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

Plaintiff-Appellant's **Appendix** illustrates two things: First, there's an element-by-element claim chart comparison between the Google Pixel 5 and the Apple iPhone 12 to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189. Second, there are charts, figures, and diagrams of several C/B CBR & CBRNE sensors that are "Native" to the manufacture of the Smartphones. Please, vacate and remand this case back to the District Court.

Sincerely,

Date: *January 12, 2023*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of January, 2023, a true and correct copy of the foregoing "Memorandum in Support of Plaintiff-Appellant's Reply Brief", was served upon the following Defendant by priority "express" mail:

Julia K. York

SKADDEN, ARPS, SLATE,

MEAGHER & FLOM LLP

1440 New York Avenue, NW

Washington, DC 20005

Phone: (202) 371-7000

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605



**PRESS FIRMLY TO SEAL**



RDC 07

20439

U.S. POSTAGE PAID
PME 2-Day
GREENVILLE, SC
29616
JAN 14, 23
AMOUNT
**$27.90**
R2304E105770-13

---

 **UNITED STATES POSTAL SERVICE** ®

**PRIORITY MAIL EXPRESS** ®

EI 393 143 546 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)  PHONE 864 288-5605

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS (Customer Use Only)**

X SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)  PHONE (202) 275-8000

COURT OF APPEALS FOR THE FEDERAL CIRCUIT
CASE NO: 23-1161
717 MADISON PLACE, NW
WASHINGTON, DC

ZIP + 4® (U.S. ADDRESSES ONLY)

2 0 4 3 9 _ _ _ _

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

 **PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT (if applicable)**

USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☐ 1-Day | ☒ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage | |
| 29615 | 1-17-22 | $ 27.90 | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 1-14-23 | ☐ 6:00 PM | $ | $ |
| Time Accepted | | Return Receipt Fee | Live Animal Transportation Fee |
| 11:18 ☐ AM ☐ PM | | $ | |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| $ | $ 27.90 | | |
| Weight ☐ Flat Rate | Acceptance Employee Initials | | |
| 14 lbs. 20 ozs. | 8m | $ | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, MAY 2021  PSN 7690-02-000-9996