No: 2023-1161

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

LARRY GOLDEN
*Plaintiff-Appellant*

v.

APPLE INC.,
*Defendant-Appellee*



ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA—

SAN FRANCISCO DIVISION

IN 3:22-cv-04152-VC: JUDGE VINCE CHHABRIA

**PLAINTIFF-APPELLANT'S MEMORANDUM IN LIEU
OF ORAL ARGUMENT**

Apple's iPhone 12 & Samsung Galaxy S21 "mirrors" the Google Pixel 5 Smartphone. All Pixel 5 elements were identified in *Golden v. Google LLC;* Fed. Cir. No. 22-1267 "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189" … "Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart." Equally, the limitations, function and operation of most smartphones, from most smartphone manufacturers, are the same. The design may vary.

Plaintiff's Dkt. 11, Modified Entry: Supplemental Appendix Filed 01/17/2023 illustrates how the limitations requiring detectors and sensors are identified as being placed in, on, upon, or adjacent the Apple smartphone. Patent Owner's supportive written description/specifications:

> "Product grouping 3 (detector case; modified and adapted) include, {}, cell phone cases … cases that [are] mounted to … affixed to … that [are] outside of … that [are] inside of, and cases that [are] adjacent to" … "sized to fit in, upon or adjacent any of the aforedescribed products ["*Product grouping 4 (monitoring & communication devices) include, {}, mobile {}, wireless communication devices, {}, desktop PCs, notebook PCs, laptops, {}, cell phones, {}, PDAs…*"] … for detecting {} chemical, biological, and radiological agents, compounds" … "placed in, on, upon or adjacent the product" …

Dkt. 11 list and describes the following CBRNE detectors and sensors made for the Apple smartphone: Megapixel camera sensors tucked into smartphones that maps airborne toxins in real time; Smartphone back and front camera biosensor for colorimetric analysis and image analysis; Smartphone ambient light sensor detects cancer biomarkers, toxic metals, and pathogens; Smartphone capillary inlet biosensor (air) detects airborne pathogens and aerosols; Smartphone capillary inlet biosensor (fluid) detects blood analysis and biomarkers; Smartphone microfluidic interchangeable cassettes with varying biosensor assays; Smartphone VIS-NIR spectrometer biosensor detects food freshness and melanoma; Smartphone NNAP biosensor electrodes detects toxic metals and organic pollutants in water; Smartphone optical waveguide biosensor detects pathogens in water and food; iTAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins; BlueforceTACTICAL CBRN purpose-built *plugins* for smartphones; Smartphone Microphone biosensor for voice recording stress levels; Smartwatch that detects nuclear bombs and illness; and, Smartphone case has the ability to detect hidden explosives.

Any **_one_** of the above sensors/detectors satisfies the limitations' requirement.

## APPLE'S FIRST iPHONE DESIGN PATENT CHART:
## APPLE'S ELECTRONIC DEVICE v. GOLDEN'S CMDC DEVICE

Plaintiff's handheld scanner, detector case, cell phone detector case, communication device, and monitoring equipment are all used interchangeably and is described as having a rectangle design top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30. Plaintiff's design for a CMDC device *antedates* Apple's design for its electronic device (i.e., smartphone) described in its first patent. [chart below]. Apple's first design patent covers only the "visual" of how the smartphone looks. Plaintiff's series of patents covers not only the design (i.e., visual), but also the utility (i.e., functional and operational capabilities) of Plaintiff's patented central processing unit (CPU); included in mobile and smartphone devices).

| Apple's 1st Patent for the electronic device (i.e., smartphone) ornamental design: First application filing date is January 5, 2007 (App. # D/270,887) | Golden's Patent for the Detector Case (i.e., CMDC device) ornamental design: USPTO Disclosure Document filed Nov. 17, 2004; *(Doc. No. 565732)* First application filing date is April 5, 2006 (App. # 11/397,118) |
|---|---|
| Electronic Device: "The device ... controls the flow of electrons is called electronic device. These devices are the main building blocks of electronic circuits. The various electronic devices are mobile phones, computers, etc." https://www.physics-and-radio-electronics.com/electronic-devices-and-circuits.html | CMDC Device: The detector case [CMDC device] includes a power source (battery or electrical) ... A cpu 40 is mounted within the detector case [CMDC device] 12 and electrically interconnects, routes, and transmits signals among items hereinafter further described and also communicates |
| FIG. 1 is a front perspective view of an electronic device in accordance with the present design. | The detector case [CMDC device] 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 2 is a rear perspective view for the electronic device. | The detector case [CMDC device] includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 3 is a front view for the electronic device. | The detector case [CMDC device] 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 4 is a rear view for the electronic device. | The detector case [CMDC device] 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 5 is a top view for the electronic device. | The detector case [CMDC device] 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |

| | |
|---|---|
| FIG. 6 is a bottom view for the electronic device. | The detector case [CMDC device] 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 7 is a left side view for the electronic device; and, | The detector case [CMDC device] 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 8 is a right-side view for the electronic device | The detector case [CMDC device] 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| The broken lines depicted in FIGS. 1, 2, and 6 of the inner *rectangle*, at the center bottom of the electronic device, represent the bounds of the claimed design, while the broken lines inside the rectangle, shown only in FIG. 6, are directed to environment and are for illustrative purposes only; the broken lines form no part of the claim design. | Fig. 1 is an illustrative drawing of the rectangle design of the detector case [CMDC device]; and, Fig. 17 are illustrative drawings of the *rectangle* design of the cell phone (i.e., smartphone) and the cell phone detector case (CMDC smartphone) |
| The article is not limited to the scale shown herein. As indicated in the title, the article of manufacture to which the ornamental design has been applied is an electronic device. Examples of an electronic device are a computer, a portable or hand-held device, a personal digital assistant, a communication device (e.g., cellular phone), a novelty item, toy, and/or the like. | FIG. 15 is a representative schematic view of… a monitoring PC or computer terminal. It is another objective of the present invention to provide… products grouped together by common features in several product groupings such as design similarity… product grouping strategy has been developed wherein products… having the same or similar design… [i]n addition to grouping products together by features, designs and materials… FIG. 17 is a perspective view… of the present invention illustrating the incorporation of the features and elements of the detector case to a cell phone … |

| | |
|---|---|
| The first iPhone featured a two-tone back that was mostly made of aluminum — a design element that the company would return to this year with the release of the iPhone 5 with a predominantly metal back. Apple's interim devices opted for different materials: The iPhone 3G and 3GS had plastic backs, while the iPhone 4 and 4S backs were made of glass. *Retrieved from: https://appleinsider.com/articles/12/12/18/apple-wins-patent-for-first-iphone-designed-by-jobs-ive* | … [P]roduct grouping strategy has been developed wherein products made from the same or similar material, products having the same or similar design… [i]n addition to grouping products together by features, designs and materials… the products grouped into what may be referred to as Product grouping 4 (monitoring & communication devices) include… mobile communication devices… personal computers (PCs), laptops, cell phones, personal digital assistants (PDAs)… handhelds |

## CONCLUSION

Sherman Antitrust Act § 1: "conspiracy in restraint of trade" — to perform work, with the *authorization and consent* of Government, to develop a "new cell phone sensing device" while *misleading* the public into believing the work was being performed for the Government, and under the protection of the Government to avoid infringement liability.

Sherman Antitrust Act § 2: "attempt to monopolize; monopolized; and maintain its monopoly" by making, using, offering for sell, and selling products that allegedly infringes Plaintiff's patented inventions (i.e., CMDC devices and CPUs).

Clayton Antitrust Act § 4: As indicated above Plaintiff was "injured in his business and property by anything forbidden in the antitrust laws—Plaintiff may sue for treble damages. Plaintiff's injury is of the type the anti-trust laws were intended to prevent (anti-trust injury). Plaintiff has suffered actual injury to his business or property.

Literal infringement and infringement under the "doctrine of equivalents": The making, using, offering for sell, and selling products that infringes Plaintiff's patented CMDC devices (i.e., Apple smartphones 'mirrors' Google smartphones).

Contributory infringement: the "supply of Component A (i.e., CPU) with instructions to connect it to a generically available Component B (i.e., CMDC device—smartphone), where A+B is Plaintiff's patented product.

Willful infringement: At the pleading stage, an enhanced damages claim based on willful infringement must only plausibly allege that the accused infringer (1) had knowledge of, or was willfully blind to, the existence of the asserted patent and (2) had knowledge of, or was willfully blind to the fact, that the accused infringer's conduct constituted, induced or contributed to infringement of the asserted patent.

On 11/19/2010: Plaintiff's notice letters and licensing offer was mailed U.S. Postal Service, Certified Mail to Mr. Tim Cook, Chief Operating Officer (COO) of Apple, and Mr. Bruce Sewell, SVP & General Counsel; to 1 Infinite Loop, Cupertino, CA 95014. Apple received and signed for the letters 11/16/2010. Tracking Nos: 7009 2250 0001 0170 9861 and 7009 2250 0001 0170 9854.

On 07/01/2019, Plaintiff responded back to Apple's Krista Grewal, Counsel IP Transactions, on Plaintiff's "Cease and Desist" request.

This case has never been decided. The Trial Court erred in dismissing Plaintiff's *Golden v. Apple Inc.* Case No. 3:22-cv-04152-VC as having already been decided in *Golden v. US* Case No. 13-307C. *Golden v. US* was a case against the United States Government—for infringement allegations against the Department of Homeland Security for *"authorizing"* and *"consenting"* to the infringement of Plaintiff's patents. The Federal Circuit affirmed a decision in *Golden v. Apple Inc.* Case No. 22-1229 that the case is dismissed *"without prejudice"*. Therefore, Plaintiff was well within his rights to refile the case in the Northern District of California Court.

Date: 03/22/

Sincerely,

*Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of March, 2023, a true and correct copy of the foregoing "Memorandum in Lieu of Oral Argument", was served upon the following Defendant by priority "express" mail:

>Julia K. York
>
>SKADDEN, ARPS, SLATE,
>
>MEAGHER & FLOM LLP
>
>1440 New York Avenue, NW
>
>Washington, DC 20005
>
>Phone: (202) 371-7000

*Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605




**PRIORITY MAIL EXPRESS®**

EI 436 403 838 US

Case: 23-1161   Document: 23   Page: 8   Filed: 03/24/2023

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE 864 288-5605

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC. 29607

**DELIVERY OPTIONS (Customer Use Only)**

☒ **SIGNATURE REQUIRED** *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE (202) 275-8000
U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT
CASE NO: 2023-1161
CASE NO: 2023-1257
717 MADISON PLACE, NW
WASHINGTON, DC
ZIP + 4® (U.S. ADDRESSES ONLY)
2 0 4 3 9 - ___ ___ ___ ___

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**← PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.   Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**
☒ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

PO ZIP Code: 29606
Scheduled Delivery Date (MM/DD/YY): 3/23/23
Postage: $ 28.75

Date Accepted (MM/DD/YY): 3/22/23
Scheduled Delivery Time: ☒ 6:00 PM
Insurance Fee: $
COD Fee: $

Time Accepted: 1:34   ☐ AM ☒ PM
Return Receipt Fee: $
Live Animal Transportation F:$

Special Handling/Fragile: $
Sunday/Holiday Premium Fee: $
Total Postage & Fees: $ 28.75

Weight: lbs. 12.6 ozs.   ☒ Flat Rate
Acceptance Employee Initials: [signature]

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY)  Time  ☐ AM ☐ PM   Employee Signature
Delivery Attempt (MM/DD/YY)  Time  ☐ AM ☐ PM   Employee Signature

LABEL 11-B, MAY 2021   PSN 7690-02-000-9996